IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THE CHARTER OAK FIRE INSURANCE
COMPANY,

    *Plaintiff/Counter-Defendant*,

    v.

BUILDERS PREMIER INSURANCE
COMPANY,

    *Defendant/Counter-Plaintiff.*

Civil No.: 1:24-cv-03530-JRR

## MEMORANDUM OPINION

Pending before the court are the parties' cross motions for summary judgment: Plaintiff/Counter-Defendant's Motion for Partial Summary Judgment (ECF No. 18; "Plaintiff's Motion") and Defendant/Counter-Plaintiff's Cross-Motion for Summary Judgment (ECF Nos. 20, 21; "Defendant's Motion"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, Plaintiff's Motion will be granted, and Defendant's Motion will be denied.

## I.    BACKGROUND

Plaintiff/Counter-Defendant The Charter Oak Fire Insurance Company ("Charter Oak"), initiated this declaratory judgment action on December 6, 2024, against Defendant/Counter-Plaintiff Builders Premier Insurance Company, Inc. ("Builders Premier"), pertaining to Defendant's alleged duty to defend Groff Tractor Mid Atlantic, LLC ("Groff"), in an underlying wrongful death action filed in the Circuit Court for Baltimore City, Maryland.[1] (ECF No. 1.) On

---

[1] *Amy Martinez Rodriguez, as the Personal Representative of the Estate of Junior Omar Rodriguez Alvarado, et al. v. Groff Tractor Mid-Atlantic, LLC, et al.* (Case No. 24-C-24-00087 OT) (the "Underlying Action").

December 31, 2024, Defendant filed an Answer and Counterclaim for Declaratory Judgment. (ECF No. 8.)  Subsequently, the court issued a scheduling order.  (ECF No. 11.)  Prior to the close of discovery, the parties submitted a joint briefing schedule pertaining to their cross-motions for summary judgment, which the court granted.  (ECF No. 17.)  Accordingly, Plaintiff's Motion was filed on April 8, 2025 (ECF No. 18), and Defendant's cross Motion on May 6, 2025.  (ECF Nos. 20, 21.)  Both Motions have been fully briefed.  (*See* ECF Nos. 23, 25.)

Upon review of the cross-motions, the court noted the settlement of the Underlying Action and ordered the parties to advise whether they wished to be referred to a Magistrate Judge for settlement of the instant action.  (ECF No. 26.)  In response, the parties filed a joint status report informing the court that settlement of the Underlying Action did not resolve the issues in dispute in this matter and Plaintiff Charter Oak intended to seek leave to file an amended complaint to include a claim related to the duty to indemnify.  (ECF No. 27.)  Accordingly, on March 25, 2026, the court entered an order: (1) directing Plaintiff to file a motion for leave to amend by April 20, 2026, unless the parties agreed to a different date by consent motion; (2) requiring a joint status report as to how, if at all, the proposed amended pleading would affect the pending cross-motions for summary judgment; and (3) scheduling a telephone conference with the parties to discuss same. (ECF No. 28.)  The court's order also administratively stayed this action pending the above-referenced conference.  *Id.*

The parties' subsequent status report asserted their expectation that the proposed amended pleading would not affect the pending cross-motions, which primarily address whether Builders Premier had a duty to defend Groff in the Underlying Action.  (ECF No. 29 at p. 2.)[2]  Thus, the parties provided, "if the [c]ourt decide[s] there is no duty to defend, the case is effectively over,

---

[2] The court's reference to all filings refers to the internal CM/ECF pagination.

and the [c]ourt could enter judgment in favor of Builders Premier on both the duty to defend and the duty to indemnify." *Id.* at p. 3.[3]  Alternatively, if the court decides there is a duty to defend, the parties advised that they agree litigation should proceed to determine whether there is a duty to indemnify and any potential damages, and to revisit whether to submit the case to a Magistrate Judge for a settlement conference. *Id.*  The court confirmed the above with the parties during the subsequent April 30, 2026, telephone conference and deferred ruling on the pending Motions until amended pleadings were filed.

On May 5, 2026, the court entered an order granting Plaintiff's Consent Motion for Leave to File Amended Complaint (ECF No. 33); the amended pleading was subsequently docketed at ECF No. 35.  The Amended Complaint—now the operative pleading—asserts the following counts:

> Count I: Declaratory Judgment: Groff is an Insured Owed a Defense and Indemnification by Builders Premier;
>
> Count II: Declaratory Judgment: Builders Premier's Defense and Indemnification Obligations are Primary; and
>
> Count III: Breach of Contract: Builders Premier's Failure to Defend and Indemnify.

(ECF No. 35 ¶¶ 22–40.)  On May 15, 2026, Defendant filed an Answer and Counterclaim seeking declaratory judgment that Builders Premier owed no duty to defend or indemnify Groff.  (ECF No. 36.)  Plaintiff filed an Answer to the Counterclaim on May 21, 2026.  (ECF No. 37.)  In light of the amended pleadings, the Motions are now ripe for review.

---

[3] As the parties correctly note, "if there is no duty to defend, there cannot be a duty to indemnify because the duty to defend is broader than the duty to indemnify."  (ECF No. 29 at pp. 2–3.) *See Harford Mutual Ins. Co. v. Millers Cap. Ins. Co.*, No. 1:25-CV-04003-JMC, 2026 WL 1500880, at *5 (D. Md. May 28, 2026) (finding "[i]f an insurer has no duty to defend, it follows that there is no duty to indemnify") (citing *Nautilus Ins. Co. v. REMAC Am., Inc.*, 956 F. Supp. 2d 674, 681–82 (D. Md. 2013)).

II.    **UNDISPUTED FACTS**

Except where noted, the following facts are undisputed.[4]

**A. The Parties**

Plaintiff/Counter-Defendant Charter Oak is a Connecticut corporation in the business of providing insurance, with its principal place of business in Connecticut.  Plaintiff asserts that at all pertinent times to this dispute, Charter Oak was licensed to conduct its business in the state of Maryland as a foreign corporation.  (ECF No. 35 ¶ 2.)

Defendant/Counter-Plaintiff Builders Premier is a North Carolina corporation in the business of providing insurance, with its principal place of business in North Carolina.  *Id*. ¶ 3.

Non-party Groff Tractor Mid Atlantic, LLC ("Groff"), is a limited liability company that owns a store in Essex, Maryland, that sells and leases construction equipment.  At all times relevant to this dispute, Charter Oak insured Groff under a commercial general liability policy.  Groff was a named defendant in the Underlying Action.  *Id*. ¶ 2.

Non-party R. E. Harrington Plumbing and Heating Company, Inc. ("Harrington"), is a Maryland corporation that provides plumbing and utility services to local governments.  At all times relevant to this dispute, Builders Premier insured Harrington under a commercial general liability policy.  Harrington was later added as a defendant in the Underlying Action.  *Id*. ¶ 3.

**B. The Underlying Action**

Beginning in June 2023, Harrington began work on a paving and resurfacing project located at 3900 Falls Road, Baltimore, Maryland.  (ECF No. 18-1 at p. 3.)  To complete the project, Harrington rented several pieces of heavy equipment from Groff including a Sakai Asphalt Roller.  *Id.*  The rental agreement between Groff and Harrington was dated June 20, 2023, and took effect

---

[4] The parties stipulate and agree that Exhibits 1–9 attached to Plaintiff's Motion "are authentic and may be relied upon in briefing without further authentication."  (ECF No. 18-2 at p. 2.)

on June 21, 2023. *Id.;* Rental Agreement, Ex. 1, ECF No. 18-3 at p. 3 ¶ 4. The agreement required Harrington to add Groff as an additional insured under its liability policy.[5] On July 12, 2023, Junior Omar Rodriguez Alvarado ("Decedent"), an employee of Harrington, was tragically killed while working at the Falls Road construction site, when he was struck by the aforementioned asphalt roller being operated by his co-worker, Jairon Fabricio Sagastume Leiva, also a Harrington employee. *Id.*

Via letter dated August 29, 2023, counsel for the father of Decedent notified Groff of potential claims against Groff, Harrington, and the City of Baltimore, and requested Groff "immediately notify any insurance carrier with whom RE Harrington maintains any policy of insurance that may provide applicable coverage for this claim by furnishing the carrier(s) with a copy of [the] letter." (Ex. 2, ECF No. 18-4 at p. 2.) Subsequently, on December 1, 2023, Charter Oak (as Groff's general liability insurer) sent a demand letter to Harrington for additional insurance and indemnification, which it asserted Harrington was required to provide Groff pursuant to their rental agreement. (Ex. 3, ECF No. 18-5 at p. 2.) The letter attached a Certificate of Insurance ("COI") indicating that Builders Premier was Harrington's general liability insurer and naming Groff as an additional insured under the Builders Premier policy. *Id.* at p. 8. The COI was dated July 13, 2023, the day after the accident. *Id.*

On April 12, 2024, Builders Premier responded to Charter Oak's letter, denying any obligation to defend or indemnify Groff in the Underlying Action. (Ex. 8, ECF No. 18-10 at p. 2.) Therein, Builders Premier asserted that Groff was not named as an additional insured under its

---

[5] Specifically, the rental agreement provides: "Customer as its expense, shall purchase and maintain liability insurance for bodily injury and property damage covering the Equipment in combined amounts of not less than $1,000,000 for each occurrence. Customer shall supply to Gross proof of such insurance by Certificate of Insurance clearly setting forth the coverage for the Equipment and naming Groff as loss payee and additional insured; such insurance and evidence thereof to be in amounts and form satisfactory to Groff." (Ex. 1, ECF No. 18-2 at p. 3 ¶ 4.)

policy and did not qualify as an additional insured under the terms of the policy's Additional Insured Endorsement 70 34 (the "Endorsement"), applicable to ongoing operations. *Id.*; *see* Endorsement, Ex. 9, ECF No. 18-11 at pp. 2–3. No party raises any challenge that the accident occurred during the policy period.

On February 2, 2024, Decedent's family, as personal representatives of Decedent's estate, filed suit against Groff and Mr. Leiva in the Circuit Court for Baltimore City, Maryland (the "Underlying Complaint"), asserting two counts of wrongful death (based on negligence) and a survival action (based on negligence) against Groff only (Counts I through III), and the same three counts as to defendant Leiva only (Counts IV through VI). (Ex. 4, ECF No. 18-6 ¶¶ 26–96.) The factual background alleged that while Decedent was laying tape, Mr. Leiva began to drive the asphalt roller in reverse without looking behind the machine; while in reverse, the roller "did not emit any sounds, alarms, or warnings, whether visual or audible, to those in its vicinity[,]" including Decedent, who was killed when the machine reversed over his body. *Id.* ¶¶ 15–19.

Plaintiffs in the Underlying Action further alleged that, although the asphalt roller "either was, or should have been, equipped with a backup warning alarm and warning lights, neither were working at the time" of the accident. (Ex. 4, ECF No. 18-6 ¶ 20.) Moreover, they asserted that prior to the rental of the asphalt roller by Harrington, Groff "conducted an inspection of the subject asphalt roller and assured [] Harrington that the equipment ha[d] been inspected, properly maintained, and that the safety and warning systems were functional and working." *Id.* ¶ 29.

With respect to claims against Groff, the Underlying Complaint alleged Groff breached its duty of care to Decedent by, *inter alia*:

> (i) failing to properly inspect the asphalt roller; (ii) failing to properly maintain the asphalt roller; (iii) failing to exercise care and caution for the safety of individuals at the jobsite; (iv) failing to furnish fully-functioning equipment; (v) failing to perform all

> necessary due diligence on the leased equipment; (vi) failing to warn a lessee of nonfunctioning safety features; (vii) failing to exercise proper care and caution to avoid an injury or death; (viii) leasing/renting the asphalt roller without a working audible and visual warning system; and (ix) was otherwise negligent in causing the injury and death.

(Ex. 4, ECF No. 18-6 ¶¶ 32, 46, 60.)  Additionally, the plaintiffs in the Underlying Action asserted Decedent's injuries and death were "directly and proximately caused by the negligence of" Groff. *Id.* ¶ 33, 47, 55.

As to claims asserted against Mr. Leiva, the Underlying Complaint alleged he also breached a duty of care to Decedent by, *inter alia*:

> (i) failing to maintain proper control over the asphalt roller; (ii) failing to exercise care and caution for the safety of others at the jobsite; (iii) failing to maintain a proper lookout while operating the asphalt roller; (iv) failing to alert others of the asphalt roller's movement; (v) failing to exercise proper care and caution to avoid an injury or death; (vi) failing to use a safety spotter while reversing; (vii) failing to check behind the asphalt roller before and while reversing; (viii) failing to activate the audible and visual warning systems on the asphalt roller; (ix) operating the asphalt roller without a working audible and visual warning system; and (x) was otherwise negligent in causing the injury and death.

*Id.* ¶¶ 70, 81, 93.  The plaintiffs also asserted that Mr. Leiva's negligence was a direct and proximate cause of Decedent's injuries and death.  *Id.* ¶¶ 73, 84, 93.

Subsequently, the plaintiffs filed an amended complaint in the Underlying Action (the "Underlying Amended Complaint"), adding Harrington as a defendant.  (Ex. 5, ECF No. 18-7.) Therein, the plaintiffs included additional allegations, asserting that prior to operation of the asphalt roller, Harrington "failed to properly inspect, maintain, or notify" Groff or its own employees as to the "defective safety and audible warning systems."  *Id.* ¶ 104.  The Underlying Amended Complaint added three new counts against Harrington only—the same counts asserted

against Groff and Leiva—two counts of wrongful death and a survival action (all based on negligence).  *Id.* ¶¶ 100–144.

The plaintiffs alleged Harrington breached its duty of care to Decedent by, *inter alia*:

> (i) failing to properly inspect the asphalt roller; (ii) failing to properly maintain the asphalt roller; (iii) failing to exercise care and caution for the safety of individuals at the jobsite (iv) failing to furnish fully-functioning equipment; (v) failing to perform all necessary due diligence on the leased equipment; (vi) failing to warn R.E. Harrington & Sons and its' employees of the nonfunctioning and defective safety features; (vii) failing to exercise proper care and caution to avoid an injury or death; and (viii) was otherwise negligent in causing the injury and death.

*Id.* ¶¶ 107, 122, 137.    The Underlying Amended Complaint similarly asserted Harrington's negligence was a direct and proximate cause of Decedent's injuries and death.  *Id.* ¶¶ 108, 123, 141.

The Underlying Action was ultimately settled on the day trial was set to begin, September 15, 2025.[6]  As explained above, Charter Oak initiated the instant action against Builders Premier on December 6, 2024, while the Underlying Action was still ongoing.  (ECF No. 1.)

### C.  Relevant Provisions of the Insurance Policies

As set forth above, at the time of the accident, Plaintiff Charter Oak insured Groff pursuant to a general commercial liability policy (the "Charter Oak Policy").  (*See* Ex. 6, ECF No. 18-8.)  At the same time, Defendant Builders Premier insured Harrington pursuant to a commercial package policy, which included commercial general liability coverage (the "Builders Premier Policy").  (*See* Ex. 7, ECF No. 18-9.)  Section I, Coverage A.1.a. of the Builders Premier Policy Commercial General Liability Coverage Form provides in relevant part:

---

[6] *See* Underlying Action, Case No. 24-C-24-000877.  The court may take judicial notice of matters in the public record and publicly available information on state and federal government websites.  *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017).

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury"[7] or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence"[8] and settle any claim or "suit" that may result. . . .
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

*Id.* at p. 43. The policy further provides that it applies to "bodily injury" and "property damage" only if: (1) "[t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; [and] (2) [t]he 'bodily injury' or 'property damage' occurs during the policy period[.]" *Id.*

Section I, Coverage A.2 of the Builders Premier Policy pertaining to exclusions provides in relevant part that the policy does not apply to "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." (Ex. 7, ECF No. 18-9 at p. 44.) As to contractual liability, the exclusions section provides:

> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> 1) That the insured would have in the absence of the contract or agreement; or
>
> 2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed

---

[7] "Bodily injury" is defined as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time." (Ex. 7, ECF No. 18-9 at p. 55.)

[8] "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Ex. 7, ECF No. 18-9 at p. 57.)

in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

*Id.*

The previously mentioned Endorsement to the Builders Premier Policy provides in relevant part:

The following is added to the Commercial General Liability Coverage Form, Section II — WHO IS AN INSURED:

4. The person(s) or organizations(s) from whom equipment has been leased, but only with respect to their liability arising out of the maintenance, operation or use by you [9] of equipment leased to you by such person(s) or organization(s), subject to the following additional exclusions:

This insurance does not apply:

a. To any "occurrence" which takes place after the equipment lease expires;

b. To "bodily injury" or "property damage" arising out of the sole negligence of the person or organization from whom equipment has been leased.

(Ex. 9, ECF No. 18-11 at p. 2.)

---

[9] The Builders Premier Policy defines "you" and "your" as "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." (Ex. 7, ECF No. 18-9 at p. 43.)

### III.    LEGAL STANDARDS

#### A. Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id*. at 249.  Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted); *see Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (providing that "plaintiffs need to present more than their own unsupported speculation and conclusory allegations to survive").

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).  The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir.

2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations omitted). In so doing, "the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Id.* (citations omitted); *see Doe v. Morgan State Univ.*, 544 F. Supp. 3d 563, 574 (D. Md. 2021) (same).

## IV.   ANALYSIS

Plaintiff asserts it is entitled to partial summary judgment on Plaintiff's claims for declaratory judgment that Defendant owed Groff a duty to defend in the Underlying Action because: (1) Groff qualifies as an additional insured under the Endorsement; (2) any potential exclusions under the Endorsement do not apply; and (3) Defendant has the primary obligation to defend Groff. (ECF No. 18-1 at pp. 10–29.) In its cross Motion, Defendant seeks declaratory judgment that it had no duty to defend Groff in the Underlying Action because: (1) the conduct giving rise to Groff's liability in the Underlying Action arose prior to Harrington's possession of the asphalt roller; (2) the phrase "arising out of" in the Endorsement refers to an additional insured's vicarious liability and not its sole negligence; and (3) even if Groff were covered pursuant to the Endorsement, any potential coverage would be excluded under the "Sole Negligence of the Indemnitee" exclusion. (ECF No. 21 at pp. 10–23.)

As an initial matter, the parties stipulate and "agree that Maryland law applies to the insurance policies issued by them and identified in [their] brief[s]."  (ECF No. 18-2 ¶ 1.) Therefore, the court need not engage in a choice-of-law analysis and will apply Maryland law.  *See Allstate Ins. Co. v. Rochkind*, 381 F. Supp. 3d 488, 498 (D. Md. 2019) (finding "because the parties implicitly agree that Maryland law governs their claims, [the Court] need not inquire further into the choice-of-law questions." (quoting *Vanderhoof-Forschner v. McSweegan*, 215 F.3d 1323 (Table) at *2 n.2 (4th Cir. 2000)).

"Maryland law is well settled that 'the interpretation of an insurance policy is governed by the same principles generally applicable to the construction of other contracts.'"  *Bethany Boardwalk Grp. LLC v. Everest Sec. Ins. Co.*, 611 F. Supp. 3d 41, 50–51 (D. Md. 2020) (quoting *Mitchell v. AARP*, 140 Md. App. 102, 116 (2001)); *see Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 694 (2015) (holding that Maryland courts "construe an insurance policy according to contract principles") (citing *Moscarillo v. Prof'l Risk Mgmt. Servs., Inc.,* 398 Md. 529, 540 (2007)).  With respect to construction and interpretation of an insurance policy pursuant to Maryland law, the Fourth Circuit has explained:

> "If the policy's language is clear and unambiguous, the Court will assume the parties meant what they said.  As with any contractual dispute, we start with the relevant policy provisions."  *Perini/Tompkins,* 738 F.3d at 101 (quotation marks and ellipsis omitted); *see also Prince George's Cnty. v. Local Gov't Ins. Trust,* 388 Md. 162, 879 A.2d 81, 88 (2005) ("In interpreting an insurance policy, as with any contract, the primary task of the circuit court is to apply the terms of the policy itself."). As with other contracts, "we analyze the plain language of [an insurance] contract according words and phrases their ordinary and accepted meanings as defined by what a reasonably prudent lay person would understand them to mean." *Kendall v. Nationwide Ins. Co.,* 348 Md. 157, 702 A.2d 767, 771 (1997).  In so doing, we read the Endorsement and the Policy together as a single contract. *Local Gov't Ins. Trust,* 879 A.2d at 88 ("In general, the main insurance policy and an endorsement constitute a single insurance contract, and an effort should be made

to construe them harmoniously.").  However, "[i]f the endorsement conflicts with the main policy, the endorsement controls."  *Id.*

*Cap. City Real Est., LLC v. Certain Underwriters at Lloyd's London*, 788 F.3d 375, 379 (4th Cir. 2015).  "[I]f a contractual term is ambiguous, the court may consult 'extrinsic sources' to ascertain the meaning."  *Allstate Ins. Co.*, 381 F. Supp. at 509 (quoting *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 305 (2000)).  "A policy term is considered 'ambiguous if, to a reasonably prudent person, the term is susceptible to more than one meaning.'"  *Id.*

Moreover, "[u]nlike the majority of other states, Maryland does not follow the rule that insurance polices are to be most strongly construed against the insurer."  *Cap. City Real Est., LLC*, 788 F.3d at 379 (quoting *Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 117 Md. App. 72, 97 (1997)).  Rather, "under the general principles of contract construction, if an insurance policy is ambiguous, it will be construed liberally in favor of the insured and against the insurer *as drafter of the instrument.*"  *Id.* (emphasis in original).  "The vitality of this rule is in no way compromised when the dispute involves two insurance carriers."  *Empire Fire & Marine Ins. Co.*, 117 Md. App. at 98.

Accordingly, here, the court reads the Builders Premier Policy and Endorsement at issue as a single contract and applies the general principles of contract construction under Maryland law to determine whether Builders Premier had a duty to defend Groff in the Underlying Action.

### A.  Duty to Defend

Under Maryland law, an insurer has a duty to defend its insured "'for all claims that are potentially covered under the policy.'"  *Unwired Sols., Inc. v. Ohio Sec. Ins. Co.*, 247 F. Supp. 3d 705, 708 (D. Md. 2017) (quoting *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 15 (2004)).  "Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by

the policy." *Walk*, 382 Md. at 16. (quoting *Brohawn v. Transamerica Insurance Co.*, 276 Md. 396, 407–408 (1975)) (emphasis in original). Accordingly, an "insurer is obligated to defend an insured if 'the underlying tort suit . . . allege[s] action that is potentially covered by the policy, no matter how attenuated, frivolous, or illogical that allegation may be.'" *Allstate Ins. Co.*, 381 F. Supp. at 509 (quoting *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 643 (1996)).

Maryland courts engage in the following two-part inquiry to determine if an insurer has a duty to defend:

> (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage? The first question focuses upon the language and requirements of the policy, and the second question focuses on the allegations of the tort suit. At times these two questions involve separate and distinct matters, and at other times they are intertwined, perhaps involving an identical issue.

*Cap. City Real Est., LLC*, 788 F.3d at 379 (quoting *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, (1981)). The "inquiry focuses on the language and requirements of the policy and the allegations of the underlying suit; the facts ultimately proven in the underlying litigation have no bearing on an insurer's duty to defend." *Casero v. Chicago Title Ins. Co.*, 744 F. Appx 821, 822 (4th Cir. 2018).

As previously explained by this court:

> Courts look to "the policy, the relevant complaint, and appropriate extrinsic evidence" in determining whether a duty to defend is triggered. *Chantel Assocs. v. Mt. Vernon Fire Ins. Co.*, 338 Md. 131, 142 (1995); *see also Reames v. State Farm Fire & Cas. Ins.*, 111 Md. App. 546, 560 (1996) (analysis concerning an insurer's duty to defend on the ground that allegations in a tort action potentially bring the tort claim within policy coverage is governed "solely by evaluating the causes of action actually alleged"). Courts are not to evaluate any "[u]nasserted causes of action that could potentially have been supported by the factual allegations" because they "do not demonstrate a reasonable potential that the issue

15

> triggering coverage will be generated at trial." *Reames*, 111 Md. App. at 561 (internal quotation marks omitted). Any doubt about whether there is potentially coverage under a policy, however, is to be resolved in favor of the insured. *See Clendenin Bros.*, 390 Md. at 460.

*Batstone v. Meridian Sec. Ins. Co.*, No. CV CCB-20-1012, 2021 WL 1198146, at *3 (D. Md. Mar. 30, 2021).

### 1. *Whether Groff Qualifies as an Additional Insured*

The court first addresses whether Groff qualifies as an additional insured under the Builders Premier Policy and Endorsement by examining the terms of both as to their scope and any limitations of coverage. Plaintiff argues Groff is an additional insured under paragraph 4 of the Endorsement, stating that an insured includes an organization from which "equipment has been leased, but only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such . . . organization(s)[.]" (Ex. 9, ECF No. 18-11 at p. 2.) Thus, Plaintiff contends all that is required for Groff to qualify as an insured is for Groff's potential liability to arise out of Harrington's maintenance, operation, or use of the asphalt roller, which it believes is easily met. (ECF No. 18-1 at p. 14.)

In opposition, Defendant argues "the consistent holding[] of courts in Maryland is that the language of endorsements[,] such as the [] Endorsement [here,] restricts coverage to vicarious liability, which is not alleged in the [Underlying] Amended Complaint." (ECF No. 21 at p. 4.) Additionally, Defendant asserts "virtually every court to consider the same or comparable 'arising out of' endorsements in the context of lessor additional insured provisions, have held that coverage is limited to vicarious liability[.]" *Id.* At bottom, the parties disagree on the meaning of "arising out of" in the Endorsement.

Maryland courts construe the phrase "arising out of" to equate to "originating from, growing out of, flowing from, or the like." *Springer v. Erie Ins. Exch.*, 439 Md. 142, 159 (2014). As noted by the Fourth Circuit:

> While the phrase "arising out of" has been the subject of prior interpretation by Maryland courts, it does not have a single, "settled meaning" that applies to every insurance policy. *Phila. Indem. Ins. Co. v. Md. Yacht Club, Inc.,* 129 Md. App. 455, 742 A.2d 79, 86 (1999). The phrase "arising out of" must be construed on a "contract by contract or case by case basis." *Id.* Scottsdale argues that the phrase "arising out of" in this particular case requires a more stringent, direct link between the cause of the injury and the resulting injury—that is, proximate causation. We agree with Red Roof Inns, however, that under Maryland law, a "but for" causal link—that is, a loose cause and result relationship—is enough to satisfy the Policy's "arising out of" requirement.

*Red Roof Inns, Inc. v. Scottsdale Ins. Co.*, 419 F. App'x 325, 333 (4th Cir. 2011) (finding that the alleged "damage/injury would not have occurred but for the claimant's performance of its duties pursuant to the underlying contract, and the existence of other reasons or sources of the damage/injury did not diminish the 'arising out of' causal link that had been established."); *see Hiscox Ins. Co. Inc v. Glass Door Project, Inc.*, No. 1:25-CV-1946-JRR, 2026 WL 468541, at *6 (D. Md. Feb. 19, 2026), *report and recommendation adopted sub nom. Hiscox Ins. Co. Inc. v. Glass Door Project, Inc.*, No. 1:25-CV-01946-JRR, 2026 WL 1069701 (D. Md. Mar. 27, 2026) (finding "a sufficient 'but for' or 'loose cause and result relationship' to satisfy the [underlying insurance] [p]olicy's requirement that any exclusion must "arise out of" the operation of any residential treatment facility).

As an example, Plaintiff cites *Mass Transit Admin. v. CSX Transp., Inc.*, 349 Md. 299 (1998). There, the Supreme Court of Maryland examined an indemnification provision in a contract between the Mass Transit Administration ("MTA") and CSX Transportation, Inc. ("CSXT") in which "[MTA] agree[d] to indemnify, save harmless, and defend CSXT from any

17

and all casualty losses, claims, suits, damages or liability of every kind arising out of the Contract Service under" the agreement. *Id.* at 300. The court noted that the term "'arising out of' may introduce either coverage or exclusion provisions." *Id.* at 311. After an in-depth analysis of multiple cases examining the use of "arising out of" in the context of insurance policies and other contracts, the court held the damage at issue "arose out of CSXT's Contract Service." Importantly, the court held that it did not matter that MTA was without fault, because nothing more than "but for" causation was required for the indemnification provision to apply. Specifically, the court explained: "so long as the liability of CSXT arises out of Contract Service, it matters not that MTA is without fault." *Id.* at 317.

For its part, Defendant cites two cases decided by this court, finding that an insurer owed no duty to defend or indemnify an additional insured for acts arising out of its [the additional insured's] own negligence. (ECF No. 21 at p. 15.) In the first, *G.E. Tignall & Co., Inc. v. Reliance Nat. Ins. Co.*, the court (Hon. Catherine C. Blake, presiding) examined an additional insured endorsement that "amended [the policy] to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of [the named insured's] ongoing operations performed for that insured." 102 F. Supp. 2d 300, 305 (D. Md. 2000). Relying on *Baltimore Gas & Elec. v. Commercial Union Ins. Co.,* 113 Md. App. 540 (1997),[10] the court held the provision was unambiguous. First, Judge Blake explained the provision "was indistinguishable from Section (A) of the provision" at issue in *Baltimore Gas & Elec.,* where the Maryland Appellate Court, in construing "arising from," "characterized the policy as providing [additional

---

[10] In that action, the Maryland Appellate Court held the insurance endorsement provision at issue provided BG & E, the additional insured, with "coverage for claims brought against BG & E based on [the named insured's] work for" BG & E, and the policy did not cover claims based on actions by BG & E other than for its supervision of the named insured's work. 113 Md. App. at 557–58. Moreover, the court found that the plaintiffs in the underlying tort action ultimately chose to pursue their claim only against BG & E on the theory that BG & E was solely responsible for the underlying occurrence and thus the insurer had no duty to defend where there were no claims alleging negligence against the named insured. *Id.* at 563–66.

insured] BG & E with coverage for claims brought against it based on [named insured] Ferguson's work for BG & E as well as for claims stemming from BG & E's acts or omissions in supervising Ferguson. The court rejected any suggestion that coverage extended to liabilities arising from work performed by BG & E. Therefore, once the plaintiffs in the underlying action amended their complaint to one count based on BG & E's sole negligence, [the insurer] had no duty to defend." 102 F. Supp. 2d 300, 306 (internal citations omitted).

Subsequently, in *Bituminous Cas. Corp. v. Nelcorp Cos. of Md.*, this court came to the same conclusion when it examined an additional insured endorsement amending the policy "to include as an insured a [claimant] but only with respect to liability arising out of [the named insured's work] for that insured by or for [the named insured]." No. CV MJG-05-910, 2005 WL 8174398, at *2 (D. Md. Dec. 29, 2005). The court (Hon. Marvin J. Garbis, presiding) held "[t]here was no agreement for [the] [i]nsurer to provide coverage to any additional insured for any possible claim based on the additional insured's own negligence[]" and noted that the underlying lawsuit presented no claims based on negligence chargeable to the underlying policy's named insured. *Id.* at *3–4.

Here, the words "arising out of" in paragraph 4 of the Endorsement are unambiguous. The endorsement provisions in the cases cited by Defendant are materially distinguishable from the Endorsement provision at issue here and are therefore inapposite. Notably, in *G.E. Tignall & Co.* and *Bituminous Cas. Corp.*, the endorsements limited the scope of coverage to the additional insured only as to liability arising out of the named insured's work performed for the additional insured or the additional insured's supervision of that work. No such limitation exists here. There is no dispute of fact that the project performed by Harrington on Falls Road was not done for Groff's benefit and was not supervised by Groff. The plain language of the Endorsement makes

19

Groff an additional insured "with respect to [its] liability arising out of the maintenance, operation or use by [Harrington] of equipment leased to" Harrington by Groff, namely the asphalt roller operated by Harrington's employee. (Ex. 9, ECF No. 18-11 at p. 2.) The language of the provision plainly satisfies the "but for" test, because but for Harrington's operation of the rented asphalt roller, Groff's potential liability would not have arisen and there would be no causal link to establish Groff's alleged negligence. *See Red Roof Inns, Inc. v. Scottsdale Ins. Co.*, 419 F. App'x 325, 333 (4th Cir. 2011), *supra*.

Moreover, the court is not persuaded by Defendant's argument that "courts consistently recognize that additional insured coverage is limited to vicarious liability." (ECF No. 21 at p. 17.) Specifically, Defendant asserts "indemnification of the lessor in a property lease contract is presumptively limited to vicarious liability due to the fundamentally attenuated nature of a lease— an attenuation which is even more stark in the context of an equipment lease." *Id.* at p. 21. As a threshold matter, Defendant relies primarily on authority from jurisdictions outside of the Fourth Circuit. Such authority is neither binding on this court nor persuasive under the circumstances presented here.

Notably, in *Cap. City Real Est., LLC v. Certain Underwriters at Lloyd's London*, discussed above, where an endorsement to an insurance policy made no mention of vicarious or derivative liability, the Fourth Circuit held the endorsement plainly lacked the vicarious liability limitation the defendant sought to impose. 788 F.3d 375, 380-81. Moreover, the court noted that even if it "were to view the [e]ndorsement language as ambiguous, [the court] would be obligated to construe that ambiguity against the [defendant]" as the drafter of the agreement. *Id.* at 381. As recently explained by this court with regard to a similar endorsement providing coverage for an

20

additional insured for bodily injury arising out of or related to the named insured's negligence in the performance of its work:

> The plain language of this insurance policy indicates that PHLY has a duty to defend MAA in legal obligations related to bodily injury sustained as a result of the negligence of Chimes, Inc., in the Baltimore/Washington International Thurgood Marshall International Airport (BWI) airport ("coverage territory") during at least May 22, 2018, through May 22, 2019 ("policy period").[4] Defendant states that there must be allegations holding MAA "vicariously liable for Chimes' acts or omission" in order for additional insured coverage to attach to MAA. (ECF No. 22 at 1). Notably, however, the insurance policy does not include express language that limits coverage to only those claims alleging vicarious liability. If the parties "intended coverage to be limited to vicarious liability, language clearly embodying that intention was available." *Cap. City Real Est.*, 788 F.3d at 379. As such, the Court declines to declare that the policy is limited to cover only claims of vicarious liability.

*Maryland Aviation Admin. v. Philadelphia Indem. Ins. Co.*, 591 F. Supp. 3d 1, 6–7 (D. Md. 2022). Similarly here, as the Endorsement fails to include language limiting coverage of an additional insured under paragraph 4 to claims alleging or relying on a theory of vicarious liability, the court declines to impose the limitation Defendant seeks.

Defendant also argues that Groff is excluded from coverage because "the [Underlying] Amended Complaint must allege that any bodily injury caused by Groff was due to an 'occurrence', defined in relevant part as an accident[,]" and it fails to do so. (ECF No. 21 at p. 23.) Plaintiff responds that the Underlying Action pleadings do allege an occurrence as to Groff, specifically alleging that Groff was negligent and a "negligent act resulting in bodily injury is quintessentially an accident[,] as the result (the bodily injury) is an event that takes place without the insured's subjective foresight or expectation." (ECF No. 23 at p. 23.)

Defendant counters by extrapolating from the allegations in the Underlying Amended Complaint:

21

> According to the Amended Complaint, what the roller lacked was a functioning audible back-up warning and lights, either of which would be readily apparent in an inspection. Thus, the Complaint essentially alleges, Groff either never put the roller in reverse to see if the audible warning worked or did so and then turned it over to Harrington without warning Harrington that the audible warning did not work. Either way, the failure to warn Harrington was no accident; and any resulting injury or death cannot be deemed unexpected and unforeseen.

(ECF No. 21 at p. 23.)  Therefore, Defendant asserts, "Groff would have foreseen and expected a real possibility existed that injury or death would result from use of the roller without an audible back-up warning." *Id.*

As Plaintiff notes, under Maryland law, "an act of negligence constitutes an 'accident' under a liability insurance policy when the resulting damage was 'an event that takes place without [the insured's] foresight or expectation.'" *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 652 (1996) (quoting *Harleysville v. Harris & Brooks,* 248 Md. 148, 154 (1967)).  "In other words, when a negligent act causes damage that is unforeseen or unexpected by the insured, the act is an 'accident' under a general liability policy." *Id.*  The court went on to explain:

> If we were to adopt an objective standard and hold that the term "accident" as used in liability insurance policies excludes coverage for damage that *should have* been foreseen or expected by the insured, such insurance policies would be rendered all but meaningless. Under such an interpretation, the policy would provide no coverage for negligent acts resulting in objectively foreseeable or expectable damage. Only acts of negligence resulting in objectively *un*foreseeable or *un*expectable damage would be covered. Of course, under basic principles of tort law, the insured is unlikely to be held liable for unforeseeable or unexpectable damages resulting from his negligence. Thus, interpreting "accident" as encompassing only negligent acts resulting in unforeseeable and unexpectable damages would leave the insured covered against only those damages for which he or she is not likely to be held liable. We decline to adopt such a restrictive construction of the term accident.

*Id.* at 653 (emphasis in original); *see State Auto. Mut. Ins. Co. v. Old Republic Ins. Co.*, 115 F. Supp. 3d 615, 621 (D. Md. 2015) (explaining that "[i]n Maryland, an 'accident' is an "act of negligence . . . [where] the resulting damage takes place without the insured's actual foresight or expectation."); *Nautilus Ins. Co. v. 200 W. Cherry St., LLC*, 383 F. Supp. 3d 494, 513 (D. Md. 2019) (same).

In *Sheets*, the underlying complaint asserted that the failure of a septic system "was a result of statements made by [the insureds, the Sheetses] that they 'had no problems with the septic system' and that it was in 'good working condition.'" 342 Md. at 657 (1996). The allegations in the underlying complaint were based on the insured's negligence in failing to reveal certain necessary information about the subject property to the underlying plaintiffs. *Id.* The court held:

> According to these allegations, it is possible that the Sheetses did not foresee or expect the damage resulting from their alleged negligent or careless assertion that the septic system worked properly. It is conceivable that the Sheetses never experienced a problem with the system while they were living on the farm with their two children and therefore, at the time they represented that the system was in good working order, did not anticipate that the Christensens would encounter any difficulties. We therefore hold that the resulting damage fits within our definition of accident because it was an event that may have taken place without the Sheetses' foresight or expectation. Thus, the claim for negligent misrepresentation is at least potentially covered under the insurance policy as an "occurrence."

*Id.* at 657–58.

As set forth earlier, the Builders Premier Policy defines "bodily injury" as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time." (Ex. 7, ECF No. 18-9 at p. 55.) Additionally, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at p. 57. According to the policy, Builders Premier has "no duty to defend the insured against any 'suit'

23

seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." *Id.* at p. 43. The policy applies to "bodily injury" only if "[t]he 'bodily injury' . . . is caused by an 'occurrence' that takes place in the 'coverage territory'" and during the policy period. *Id.* at p. 43. With regard to damages, the policy provides: "damages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'" *Id.* The term accident is not defined.

As set forth above, damage, harm, or loss that should have been foreseen or expected by the insured would not be excluded from coverage, as argued by Defendant here. Importantly, the Underlying Amended Complaint expressly asserts: "Prior to the rental, [d]efendant [Groff] conducted an inspection of the subject asphalt roller and assured R.E. Harrington Inc. that the equipment had been inspected, properly maintained, and that the safety and warning systems were functional and working." (Ex. 5, ECF No. 18-7 ¶¶ 30, 44, 58.) As in *Sheets*, it is entirely "conceivable," against the backdrop of the alleged representations and absence of warning by Groff to Harrington prior to the rental of the asphalt roller, Groff did not anticipate the back-up warning system on the asphalt roller would fail. As such, the negligence claims asserted against Groff in the Underlying Amended Complaint are based on events (actions or inactions) that fit within the definition of "accident" adopted by Maryland courts, and that present coverage for potential liability as an "occurrence" under the Builders Premier Policy. Further, as previously noted, "any doubt as to whether the allegations in the [underlying] complaint state a potentially covered cause of action is ordinarily resolved in favor of the insured." *Sheets*, 342 Md. at 658.

Accordingly, pursuant to the Endorsement at paragraph 4, Groff qualifies as an additional insured under the Builders Premier Policy.

### 2. *Whether Any Exclusions Apply*

The court now addresses Defendant's argument that Groff does not qualify for coverage because the "sole negligence" exclusion in paragraph 4.b of the Endorsement limits coverage to vicarious liability, making the "but for" test described above inapplicable. (ECF No. 21 at pp. 22–23.) Plaintiff argues this exclusion is not applicable because only sole negligence is excluded, while other forms of negligence (such as joint negligence) are not. (ECF No. 18-1 at p. 23.)

The plain language of the Endorsement excludes Groff from coverage as an additional insured if "bodily injury" arises out of Groff's "sole negligence." (Ex. 9, ECF No. 18-11 at p. 2.) Here, the second part of the two-part inquiry comes into play—whether the allegations in the Underlying Action potentially bring claims against Groff within the Endorsement's coverage. *See Cap. City Real Est., LLC v. Certain Underwriters at Lloyd's London*, 788 F.3d 375, 379 (4th Cir. 2015), *supra*.

For Groff to be excluded from coverage as an additional insured under the Endorsement, the allegations in the Underlying Action would need to foreclose potential liability as to any party but Groff—which is to say, exclusion requires that there was no potential to find any party other than Groff negligent for the injuries to Decedent. As explained, the Underlying Amended Complaint set forth nine counts—three as against each of Groff, Harrington, and Mr. Leiva. In *Cap. City Real Est.*, the Fourth Circuit provided helpful analysis of the Maryland Appellate Court's ruling in *BG & E*. The Fourth Circuit noted:

> [C]rucial to the [Maryland Appellate Court's] holding was that discovery showed that the general contractor—and not its subcontractor—had the duty to fill the excavation pit into which the plaintiffs' car fell. While it was undisputed that the subcontractor had been engaged to dig the pit, the evidence also showed that BGE was responsible for filling the pit. The plaintiffs chose to pursue their claims only against BGE for its negligent failure to fulfill its

25

> duty, leading the *Baltimore Gas* court to conclude that the insurer no longer had a duty to defend.
>
> By contrast, there is not such a clean delineation of which actor owes which duty in this case, in part because the underlying complaint fails to even mention Marquez. But the underlying complaint in this case does not affirmatively present a claim that falls outside the scope of the Policy. Rather, it clearly seeks recovery for property damage that was "caused in whole or in part" by the failure to use the appropriate standard of care in performing the renovations.

*Cap. City Real Est., LLC*, 788 F.3d at 382–83.

Here, unlike the *BG & E* plaintiffs, the plaintiffs in the Underlying Action did not seek to only hold Groff liable for the July 2023 accident.  Even prior to adding Harrington as an additional defendant to the Underlying Action, the original Underlying Complaint sought to hold both Groff and Mr. Leiva, a Harrington employee, liable.  Although the Underlying Action ultimately settled, nothing in the record before the court indicates the underlying plaintiffs sought to hold Gross solely negligent; to the contrary, the record is plain that the plaintiffs pursued several negligence recovery avenues.  In addition to the triplicate claims against the defendants, the plaintiffs alleged Groff, Leiva, and Harrington were each the direct and proximate cause of Decedent's death.  (*See, e.g.,* Ex. 5, ECF No. 18-7 ¶¶ 34, 73, 108.)  Accordingly, the "sole negligence" exclusion in paragraph 4.b of the Endorsement does not exclude Groff as an additional insured under the Builders Premier Policy.  Because Groff qualifies as an additional insured, Defendant owed Groff a duty to defend in the Underlying Action.  (*See* Ex. 7, ECF No. 18-9 at p. 43.)

### 3. *Whether Builders Premier Has the Primary Obligation to Defend*

Finally, Plaintiff argues that Defendant had the primary obligation to defend Groff in the Underlying Action pursuant to provisions in the Charter Oak Policy and Builders Premier Policy. (ECF No. 18-1 at pp. 27–29.)  Defendant counters that Plaintiff's argument is premature because Plaintiff's "policy is not excess to [the Builders Premier] [P]olicy because there is no valid or

enforceable coverage available to Groff under the Builders [Premier] [P]olicy." (ECF No. 21 at

p. 26.) The court disagrees that Plaintiff's argument is premature, as the court has found that Groff

does indeed qualify as an additional insured pursuant to the Builders Premier Policy and

Endorsement, and Defendant had a duty to defend Groff in the Underlying Action. Thus, the court

looks to the provisions of both policies to determine whether Defendant had the primary obligation

to defend.

As to other insurance, Section IV, paragraph 4 of the Builders Premier Policy provides:

> **4. Other Insurance**
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
> > **a. Primary Insurance**
> > This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.
> >
> > **b. Excess Insurance**
> > (1) This insurance is excess over:
> > > (a) Any of the other insurance, whether primary, excess, contingent or on any other basis:
> > > > (i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";
> > > > (ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;
> > > > (iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or
> > > > (iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I - Coverage A Bodily Injury And Property Damage Liability.

27

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(Ex. 7, ECF No. 18-9 at p. 54.)

The Charter Oak Policy, under which Groff is a named insured, provides in pertinent part:

**a. Primary Insurance**
This insurance is primary except when Paragraph b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

**b. Excess Insurance**
(1) This insurance is excess over:
(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:
(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";
(ii) That is insurance for "premises damage";
(iii) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to any exclusion in this Coverage Part that applies to aircraft, "autos" or watercraft;
(iv) That is insurance available to a premises owner, manager, or lessor that qualifies as an insured under Paragraph 4 of Section II – Who Is An Insured, expect when Paragraph d. below applies; or
(v) That is insurance available to an equipment lessor that qualifies as an insured under Paragraph 5 of Section II – Who Is An

28

> Insured, except when Paragraph d. Below applies.
> (b) Any of the other insurance, whether primary, excess, or contingent or on any other basis, that is available to the insured when the insured is an additional insured, or is any other insured that does not qualify as a named insured, under such other insurance.
>
> (2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(Ex. 6, ECF No. 18-8 at p. 22.)

The court agrees with Plaintiff's reading of the pertinent provisions of both policies. The plain language of the above-quoted excess insurance provision of the Builders Premier Policy does not apply to Groff's policy with Charter Oak because Groff is the named insured under the Charter Oak Policy (*see* Ex. 6, ECF No. 18-8 at p. 3)—not an additional insured, as required for the Builders Premier Policy to operate as excess coverage. In sum, based on the plain, unambiguous language of both policies, Builders Premier Policy is not excess coverage.

Conversely, as set forth above, the Charter Oak Policy provides excess, not primary, coverage over "[a]ny of the other insurance, whether primary, excess, or contingent or on any other basis, that is available to the insured when the insured is an additional insured, or is any other insured that does not qualify as a named insured, under such other insurance." (ECF No. 18-1 at p. 22.) Again, the plain language of this provision renders Charter Oak the excess insurer so long as any other insurance is available to Groff as an additional insured. Because Groff is an additional insured under the Builders Premier Policy, the Charter Oak Policy constitutes excess insurance.

29

Pursuant to Section IV, paragraph 4.a. of the Builders Premier Policy: "[i]f this insurance is primary, our obligations are not affected unless any of the other insurance is also primary." Because the Builders Premier Policy is not excess coverage, and the Charter Oak Policy is in fact excess, the Builders Premier Policy is primary, and its obligations are not affected by the Charter Oak Policy. Accordingly, as the court finds Groff is an additional insured under the Builders Premier Policy and Builders Premier had a duty to defend Groff in the Underlying Action, a plain reading of both policies dictates that the Builders Premier Policy qualifies as the primary insurance in this case and Defendant Builders Premier had the primary duty to defend Groff.

## V.   **CONCLUSION**

For the reasons set forth herein, by separate order, Plaintiff's Motion will be granted, and Defendant's Motion will be denied.

June 15, 2026

/S/
_____
Julie R. Rubin
United States District Judge